

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: October 02, 2019.**

**CRAIG A. GARGOTTA**
**UNITED STATES BANKRUPTCY JUDGE**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **CASE NO. 18-52743-CAG** |
| **FRANCISCO GARCIA HUIZAR III,** | § | |
| | § | **CHAPTER 7** |
| **Debtor.** | § | |
| **JAMES KEITH KING,** | § | |
| **Plaintiff.** | § | |
| **v.** | § | **ADVERSARY NO. 19-05007-CAG** |
| **FRANCISCO GARCIA HUIZAR III,** | § | |
| **Defendant.** | § | |

**<u>MEMORANDUM OPINION ON JAMES KEITH KING'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 21)</u>**

Came on to be considered the above-numbered adversary proceeding and Plaintiff James Keith King's Motion for Summary Judgment (ECF No. 21) ("Summary Judgment Motion") filed on July 12, 2019, the parties' responses, and supporting evidence.[1] For the reasons stated herein, the Motion will be granted. A separate Order will be entered granting Plaintiff's Motion for Summary Judgment.

[1] "ECF" denotes the electronic court filing number in this adversary proceeding.

## JURISDICTION

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) relating to this Court's determination of the discharge of certain debts. Venue is proper under 28 U.S.C. § 1409. Both parties have consented to this Court's authority to enter a final order. (ECF Nos. 9 and 10). Determining the scope of a debtor's discharge is a fundamental part of the bankruptcy process. ***Farooqi v. Carroll (In re Carroll)***, 464 B.R. 293, 312 (Bankr. N.D. Tex. 2011). As the ***Farooqi*** court explained:

> Congress clearly envisioned that bankruptcy courts would hear and determine all core proceedings, 28 U.S.C. § 157(b)(1), which include, as relevant here, "determinations as to the dischargeability of particular debts." 28 U.S.C. § 157(b)(2)(I). The Supreme Court has never held that bankruptcy courts are without constitutional authority to hear and finally determine whether a debt is dischargeable in bankruptcy. In fact, the Supreme Court's decision in ***Stern*** clearly implied that bankruptcy courts have such authority when it concluded that bankruptcy courts had the constitutional authority to decide even state law counterclaims to filed proofs of claim if the counterclaim would necessarily be decided through the claims allowance process.

***Id.*** (citing ***Stern v. Marshall***, 564 U.S. 462, 504 (2011)). Because this case involves a determination as to the dischargeability of particular claims, this Court has both statutory and constitutional authority to enter a final judgment.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Bankruptcy Procedure 7056 applies Rule 56(c) of the Federal Rules of Civil Procedure to adversary proceedings. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322 (1986). If summary judgment is appropriate, the Court may resolve the case

as a matter of law. ***Celotex Corp.***, 477 U.S. at 323; ***Blackwell v. Barton***, 34 F.3d 298, 301 (5th Cir. 1994). The Fifth Circuit has stated "[t]he standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon evidence before the court." ***James v. Sadler***, 909 F.2d 834, 837 (5th Cir. 1990) (citing ***Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.***, 475 U.S. 574, 586 (1986)).

To the extent that the non-moving party asserts the existence of factual disputes, the evidence offered by the non-moving party to support those factual contentions must be of a quality sufficient so that a rational fact finder might, at trial, find in favor of the non-moving party. ***Matsushita***, 475 U.S. at 585–87 (1986) (non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts"); ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 249–50 (1986) ("adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial"). If the record "taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." ***LeMaire v. Louisiana***, 480 F.3d 383, 390 (5th Cir. 2007). In determining whether a genuine issue of material fact exists, the non-moving party must respond to a proper motion for summary judgment with specific facts demonstrating that such genuine issue exists. A genuine issue of material fact is not raised by mere conclusory allegations or bald assertions unsupported by specific facts. ***Leon Chocron Publcidad Y Editoria, S.A. v. Jymm Swaggart Ministries***, 990 F.2d 1253 (5th Cir. 1993).

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff seeks a determination that a North Carolina state court judgment, including an award of damages, against Defendant may be given preclusive effect and that this Court should

find on the basis of that judgment that the judgment debt is non-dischargeable under 11 U.S.C. § 523(a)(6) (West 2019).[2] Plaintiff alleges in his Complaint the following uncontested material facts:

James Keith King is a resident of North Carolina. (Complaint, ECF No. 1, ¶ 5). Huizar is a resident of the State of Texas with an address listed in San Antonio, Texas. (***Id***. at ¶ 6). King is the largest creditor of Huizar in this case pursuant to a judgment in the General Court of Justice, Superior Court Division, Durham County, North Carolina that was rendered on August 22, 2018 (the "Judgment"). (***Id***. at ¶ 7).

King was married to his wife, Danielle Swords King, on April 3, 2010. A former X-Games performer, King is the owner of King BMX Productions and, after their marriage, his wife assisted him in running the business. King and his wife traveled together extensively for business to host stunt shows all over the United States. (***Id***. at ¶ 8) The Kings have a young minor child. (***Id***. at ¶ 9).

Mrs. King met Huizar, who was working as a marketing agent at a Geico Insurance booth at a BMX show in New York. Unbeknownst to King, the relationship between Huizar and Mrs. King began that weekend. (***Id***. at ¶ 10). During the months of August - December 2015, following the New York show, Huizar and Mrs. King spent over 6,000 minutes of time on the telephone and in text messages with each other. Huizar also rented a room within one mile of the Kings' home for at least one or more nights on eight separate occasions between August 31, 2015, and November 16, 2015. King was unaware that there was any ongoing relationship between Mrs. King and Huizar until late November 2015 when King received a Facebook

[2] Unless otherwise noted, all references herein are to Title 11, 11 U.S.C. § et seq. Section 523(a)(6) states that: A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-- for willful and malicious injury by the debtor to another entity or to the property of another entity; ….

message from Huizar's then current girlfriend advising him of Huizar's relationship with Mrs. King. Mrs. King reassured King that there was no relationship with Huizar and what he had been told was not true. (***Id***. at ¶ 11). Mrs. King did not tell Plaintiff that she was still meeting with Defendant and that their minor child would accompany her in her affair with Defendant. (***Id***. at ¶¶ 14, 15).

On January 20, 2017, Mrs. King moved into an apartment in North Carolina, which was funded by Huizar and leased by Huizar and Mrs. King. Huizar paid full rent for the apartment leased with Mrs. King and remained on the lease at least through May 2017. King and his wife remained separated for a year and officially divorced on December 15, 2017. (***Id***. at ¶ 16). King filed a lawsuit in North Carolina state court against Huizar on April 6, 2017, in which King asserted claims for alienation of affection, criminal conversation, assault, battery, intentional infliction of emotional distress, and negligent infliction of emotional distress (the "Lawsuit") under applicable North Carolina law. The Lawsuit was based on the extramarital affair between Huizar and King's wife. (***Id***. at ¶ 19).

Huizar failed to file an answer after being served. As a result, an Entry of Default was entered. On April 11, 2018, Huizar filed a Motion to Set Aside Entry of Default. (***Id***. at ¶ 21). The North Carolina court denied the request and set for hearing the issues of damages related to King's claims on June 28, 2018. (***Id***. at ¶¶ 19–21). A five-day trial was held on the damage's component to the Judgment and the parties were afforded the opportunity to put on evidence. (***Id***. at ¶ 22).

The North Carolina Court rendered the Judgment for $1,215,312.00 in economic damages under applicable state law to include the present value of business loss, loss of assistance and costs not already reimbursed in the domestic suits, and $1,000,000 in

noneconomic damages to include loss of love, affection and consortium, loss of sexual relationship, loss of society, companionship and comfort, loss of favorable mental attitude, mental anguish and decline in health and shame and humiliation for a total actual/compensatory damages award of $2,215,32.00. (Complaint Ex. A, ECF No. 1-1, ¶ 98).

In the Judgment, the North Carolina Court held that Huizar engaged in "malice and willful and wanton conduct" with the conscious and intentional disregard of and indifference to the rights and safety of others, which Huizar knew or should have known was reasonably likely to result in damage, injury, or other harm. (***Id***. at ¶ 99). The North Carolina Court rendered an award of punitive damages to King in the amount of three times the compensatory award for a total punitive damages award of $6,645,936.00. (***Id***. at ¶ 100). The North Carolina Court stated that the "indignity and harm done to [King] by [Huizar] in this case was great and that [Huizar's] conduct during the King's marriage was reprehensible and malicious." (***Id***. at ¶ 101). The North Carolina Court ordered costs assessed against Huizar, including the expert fees incurred by King in connection to the lawsuit. The total sum in costs and expert fees determined by the North Carolina Court was $25,000. (Complaint, ECF No. 1, ¶ 25). The total outstanding sum of the Judgment is $8,886,248.00. After the North Carolina Court entered the Judgment on August 22, 2018, Huizar filed his voluntary petition under chapter 7 on November 20, 2018 seeking to discharge the Judgment. (***Id***. at ¶ 26).

## DISCUSSION

Plaintiff filed his Motion for Summary Judgment seeking judgment as a matter of law through the application of collateral estoppel and res judicata. Plaintiff argues the basis of Huizar's liability to Plaintiff has been adjudicated in the state court lawsuit. Plaintiff argues that all the underlying fact issues were litigated, and the claims and resulting Judgment is binding on

the ultimate fact issues in this adversary proceeding. Plaintiff posits that based on those findings of fact, claims and judgment, Huizar's judgment debt to Plaintiff arose as a result of willful and malicious conduct that precludes dischargeability of the debt under § 523(a)(6).

Defendant's Response (ECF No. 27)[3] argues that collateral estoppel and res judicata do not apply because the state court determination was not a final decision and required the state court to hold a trial on the merits. (ECF No. 27, ¶¶ 31–33). Defendant argues that his conduct was not willful and malicious under § 523(a)(6). Further, Defendant suggests that notwithstanding Supreme Court and Fifth Circuit precedent on § 523(a)(6), application of the case law to Plaintiff's judgment is difficult due to the uncertainty regarding how courts apply malice and willfulness. (***Id***. at ¶¶ 36–45). Defendant argues the torts of alienation and criminal conversion are archaic and disfavored under the law. (***Id***. at ¶ 52). Defendant states that when the Bankruptcy Code was amended in 1978, Congress overruled prior precedent and implicitly found that criminal conversation and its companion tort of alienation of affections, while perhaps reckless, were not willful and malicious. (***Id***. at ¶ 67). Finally, Defendant suggests that his Constitutional rights under the First and Fourteenth Amendments have been abridged by the state court's judgment and this Court's consideration of the dischargeability of his debt. (***Id***. at ¶¶ 68–87).

**Bankruptcy Courts May Give Preclusive Effect to State Court Judgments.**

The doctrine of collateral estoppel is applicable to bankruptcy nondischargeability proceedings. ***Grogan v. Garner***, 498 U.S. 279, 291(1991); ***Pancake v. Reliance Ins. Co. (In re***

[3] Defendant filed his Motion for Summary Judgment with the State Court Judgment as an exhibit. (ECF No. 21). The Motion was dismissed for failure to include a certificate of service and form of order. (ECF No. 22). Defendant then filed his Amended Motion for Summary Judgment. (ECF No. 23). The Amended Motion for Summary Judgment was denied as moot because the Defendant could not amend a Motion that had already been dismissed. Defendant also filed his Trial Brief/ Memorandum of Law in Support pursuant to the Local Rules. The Motions for Summary Judgment, Response, and Trial Brief make and incorporate the same arguments. Further, the Defendant did not offer any controverting evidence in opposition to Plaintiff's Motion for Summary Judgment other than attaching the state court Judgment to his Motions.

***Pancake)***, 106 F.3d 1242, 1244 (5th Cir. 1997); ***RecoverEdge, L.P. v. Pentecost***, 44 F.3d 1284, 1294 (5th Cir. 1995) (overruled on other grounds); ***Daniels v. The Equitable Life Assurance Society***, 35 F.3d 210, 212 (5th Cir. 1994). "[P]arties may invoke collateral estoppel in certain circumstances to bar relitigation of issues relevant to dischargeability [and] collateral estoppel can provide an alternate basis to satisfy the elements of §523(a)(6)." ***Raspanti v. Keaty (In re Keaty)***, 397 F.3d 264, 270 (5th Cir. 2005) (quotation marks and alterations omitted). "In other words, when an issue that forms the basis for the creditor's theory of non-dischargeability has been actually litigated in a prior proceeding, neither the creditor nor the debtor may relitigate those grounds." ***RecoverEdge, L.P.***, 44 F.3d at 1294. While the doctrine of issue preclusion applies in bankruptcy dischargeability litigation, a bankruptcy court retains exclusive jurisdiction to determine whether a debt is dischargeable. ***Grogan***, 498 U.S. at 285 n.11 (1991); ***Simpson & Co. v. Shuler (In re Shuler)***, 722 F.2d 1253, 1255 (5th Cir. 1984).

When giving preclusive effect to a state court judgment the Court applies the issue preclusion rules of that state. ***Marrese v. American Academy of Orthopedic Surgery***, 470 U.S. 373 (1985); ***Miller v. J. D. Abrams, Inc. (In re Miller)***, 156 F.3d 598, 601 (5th Cir. 1998). State judicial proceedings, such as the Judgment, are entitled to the same full faith and credit in federal courts as they enjoy in the courts of the state from which they are taken. *See* 28 U.S.C § 1738 (West 2019).[4] Under North Carolina law, collateral estoppel applies when: (1) the issues to be concluded are the same as those involved in the prior action; (2) the issues were raised and actually litigated in the prior action; (3) the issues were material and relevant to the disposition of the prior action; and (4) the determination made of those issues in the prior action was necessary and essential to the resulting judgment. *See* ***Urguhart v. E. Carolina Sch. Of Med.***, 712 S.E.2d

[4] "Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."

200, 204 (N.C. App. 2011) ("The doctrine of collateral estoppel has been applied when successive lawsuits are brought before different tribunals with different jurisdictional authority, such as the tribunals at issue here."). If the state court, while adjudicating the underlying state law question, determines a factual issue using standards that are identical to those in the Bankruptcy Code governing the dischargeability of debts, then collateral estoppel will bar re-litigation of those same issues.[5]

**Collateral Estoppel Applies to the North Carolina Judgment.**

Defendant argues that collateral estoppel applies under North Carolina law when: "(1) a prior suit result[ed] in a final judgment *on the merits*; (2) identical issues [were] involved; (3) the issue was actually litigated in the prior suit and necessary to the judgment; and (4) the issue was actually determined." ***McDonald v. Skeen***, 567 S.E.2d 209, 211, *disc. rev' d*, 571 S.E.2d 222 (2002) (citing ***Thomas M. McInnis & Assoc., Inc. v. Hall***, 349 S.E.2d 552, 557–58 (N.C. 1986)) [italics added]. Defendant argues that because there was no trial on the merits as to the liability of Defendant, this Court is not bound by the Default Judgment, the Damages Judgment or the underlying record of the North Carolina Default Court's proceedings.

Defendant's argument that North Carolina case law requires a trial on the merits before judgment may be granted and that a default judgment cannot be given preclusive effect is incorrect. In ***McDonald***, the issue was not whether a default judgment may be given preclusive effect, but rather whether the denial of summary judgment premised on collateral estoppel grounds, although interlocutory, was correct. ***Id***. at 211. The ***McDonald*** court did not decide or consider if a default judgment may be used in a subsequent suit between the same parties for

[5] *See* ***Brown v. Felsen***, 442 U.S. at 139 n. 10. ("If, in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of § 17 [of the former Bankruptcy Act of 1898], then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the bankruptcy court").

preclusive effect. Moreover, in ***Thomas*** the court addressed whether the defendant-spouse's failure to respond to a complaint wherein the defendant-spouse thought the other defendant-spouse had settled the case was excusable neglect under Fed. R. Civ. P. 60(b). 349 S.E.2d at 424. The issue in ***Thomas*** was whether a judgment entered against one defendant could be used as collateral estoppel as to the other defendant on an issue that was not presented in the prior case. ***Id***. at 560. These cases are inapposite to the case at bar.

The North Carolina court entered a default judgment against Huizar on January 3, 2018, finding liability against Huizar for Plaintiff's claims of alienation of affection, criminal conversation, assault, battery, intentional infliction of emotional distress and negligent infliction of emotional distress. (Complaint Ex. A, ECF No. 1-1, ¶¶ 1, 3). On April 11, 2018, after the appearance of counsel, Huizar filed a Motion to Set Aside Entry of Default. (***Id***. at ¶ 5). The court denied the Motion to Set Aside Entry of Default on May 29, 2018. (***Id***.).[6] The court conducted a hearing on the issue of damages. (***Id***.). The Court's Judgment notes that, despite the Entry of Default, the Court allowed Huizar to "present any and all evidence he desired to present during the five days of hearing on the issue of damages, including lengthy testimony by King's wife as to the history and quality of the parties' marriage." (***Id***. at ¶ 6).

Collateral estoppel is designed to prevent repetitious lawsuits over matters that have once been decided and have remained substantially static, factually and legally. *See* ***Bennett v. Smith (In re Smith)***, Adv. No. 05-10041, 2006 WL 3333801, at *14 (Bankr. M.D.N.C. Nov. 16, 2006). As noted herein, the North Carolina court found that Defendant's actions were malicious and willful as to the alienation of affection claim. Under North Carolina law, the opportunity to litigate constitutes actual litigation for collateral estoppel purposes. *See* ***Naddeo v. Allstate Ins.***

---

[6] The Judgement states that the Defendant was served by publication in North Carolina and Texas after "voluminous attempts to serve him via certified mail, sheriff, and private process servers . . . ." (Complaint Ex. A, ECF No. 1-1, ¶ 2).

***Co.***, 533 S.E.2d 501, 505–06 (N.C. App. 2000) (finding that collateral estoppel applied "where the party against whom the prior decision was asserted enjoyed a full and fair opportunity to litigate the issue in a prior proceeding") (overruled on other grounds). The party opposing issue preclusion has the burden to show that there was not a full and fair opportunity to litigate the issues in the prior matter. ***Miller Bldg. Corp. v. NBBJ N.C. Inc.***, 497 S.E.2d 433, 435 (N.C. App. 1998).

In ***Naddeo***, an insured obtained a default judgment against an insurance company. ***Naddeo***, 533 S.E.2d at 505–06. The insurance company's motion to set aside the default judgment was denied. ***Id***. The Court applied collateral estoppel against the insurance company by finding that the default judgment was "binding upon the insurer as to issues which were or might have been litigated." ***Id***. at 506. Thus, even though the defendant failed to defend the previous lawsuit, there was an opportunity to do so, and collateral estoppel applied. ***Id***. The Fifth Circuit has held that "the requirement that an issue be 'actually litigated' for collateral estoppel purposes simply requires that the issue is raised, contested by the parties, submitted for determination by the court, and determined." ***In re Keaty***, 397 F.3d at 272 (citing ***James Talcott, Inc. v. Allahabad Bank, Ltd.***, 444 F.2d 451, 459–60 (5th Cir. 1971)); *see also* ***In re Gober***, 100 F.3d 1195, 1201–03 (5th Cir. 1996) (holding that a Texas state court default judgment may given preclusive effect under the doctrine of collateral estoppel).

The North Carolina court allowed Huizar to "present any and all evidence he desired to present during the five days of hearing on the issue of damages, including lengthy testimony by King's wife as to the history and quality of the parties' marriage." (Complaint Ex. A, ECF No. 1-1, ¶ 6). The court found that Huizar's actions were willful and malicious, which were essential to the North Carolina Court's determination of liability and damages in the Judgment. The North

Carolina Court rendered a determination of liability against Huizar for all Plaintiff's claims and awarded compensatory and punitive damages based on Huizar's actions. Thus, the determination of the North Carolina Court that Huizar acted willfully and maliciously was material and relevant to the disposition of Plaintiff's claims in the North Carolina proceeding and the award of damages for same in the Judgment. The Judgment constitutes a "final determination on the merits" as to Plaintiff's claims. As part of this final determination, the court found there was "clear and convincing evidence" of Huizar's malicious and willful conduct. (Complaint Ex. A, ECF No. 1-1, ¶ 99). Therefore, under the doctrine of collateral estoppel, the Court may apply the North Carolina Judgment for a determination that Defendant's conduct was willful and malicious under § 523(a)(6).

Defendant also argues that, after rendering a Default Judgment as to liability, the North Carolina court adopted in whole Plaintiff's Draft Judgment as its Damages Judgment. Defendant states that this wholesale adoption of Plaintiff's Draft Judgment casts into question whether the North Carolina court independently considered the factual underpinnings of the elements of each of the underlying torts. *See* ***Pacific Energy & Minerals, Ltd. v. Austin (In re Austin)***, 93 B.R. 723, 725 (Bankr. D. Colo. 1988) (debtor/defendant *unsuccessfully* challenged the preclusiveness of a default judgment even though defendant consented to the entry of default judgment) (emphasis added). Defendant provides no summary judgment proof of the North Carolina's court purported wholesale adoption of the state court plaintiff's counsel proposed judgment. As such, absent competent summary judgment proof, this argument is unavailing. Moreover, Defendant's suggestion that the North Carolina court acted improperly is a collateral attack on the Judgment. Under the doctrine of full faith and credit, this Court must give comity to the state court's judgment.

**Res Judicata Applies to the North Carolina State Court Judgment.**

As noted herein, state judicial proceedings are entitled to full faith and credit in federal court. 28 U.S.C. § 1738 (West 2019). A federal court must look to the law of the state in which it was entered and give the judgment the same preclusive effect that it would receive in that state. *See* ***Marrese v. American Academy of Orthopedic Surgeons***, 470 U.S. 373, 380 (1985) (finding that a state court judgment could be given preclusive effect in an federal antitrust suit). Under the doctrine of res judicata under North Carolina law, a final judgment on the merits in a prior action will prevent a second suit based on the same cause of action between the same parties or those in privity with them. *See* ***Bennett v. Smith (In re Smith)***, 2006 WL 3333801, at *9–10 (North Carolina law is clear that a judgment is res judicata of all points raised in the pleadings or which might be predicated upon them) (citation omitted). Moreover, a default judgment may be given preclusive effect even where the complaint was not verified. ***Id***. (citation omitted).

The elements of res judicata under North Carolina law are: "(1) a final judgment on the merits in an earlier suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits." ***Nash Cnty. Bd. of Educ. v. Biltmore***, 640 F.2d 484, 486 (4th Cir. 1981).

Res judicata applies where there was a prior adjudication on the merits of an action involving the same parties and issues as the action. Here, there is a final judgment on the merits; no appeal was taken regarding the Judgment. The first requirement is met because the Judgment is final and non-appealable.

The second requirement is met because the parties to the Judgment are the same as the parties in the instant proceeding. Pursuant to § 523(a)(6), a debt is not dischargeable if the debt arises as a result of willful and malicious injury by the debtor to another entity or to the property

of another entity. 11 U.S.C. § 523(a)(6) (West 2019). Plaintiff must establish that he was injured by Huizar's willful and malicious actions. Those facts were previously tried and judicially determined by the North Carolina court's Judgment.

The third requirement is met because the cause of action the North Carolina Court adjudicated and the instant cause of action are identical. The Judgment uses the same words of § 523(a)(6) in determining that Huizar acted willfully and maliciously. The North Carolina Court found liability and damages in favor of Plaintiff for several causes of action, including alienation of affection and criminal conversation.

Under North Carolina law, establishing a common law claim for alienation of affection requires a plaintiff to prove: (1) that he and his wife were happily married and that a genuine love and affection existed between them; (2) that the love and affection so existing was alienated and destroyed; and (3) that the wrongful and malicious acts of the defendant produced and brought about the loss and alienation of such love and affection. ***McCutchen v. McCutchen***, 624 S.E.2d 620, 623 (N.C. 2005) (citation omitted). The third element of alienation of affection includes the Fifth Circuit's definitions of "malicious" and "willful" by requiring evidence that harm was caused because of the intentionally wrongful and malicious acts of the defendant. In addition to determining that Huizar's actions met the element of "malicious activity" in ruling in favor of Plaintiff on the alienation of affection claim, the North Carolina Court specifically determined that Huizar's actions were willful and malicious:

a. "Defendant's behavior was reckless, wanton and malicious." (Complaint Ex. A, ECF No. 1-1, ¶ 36);

b. the "conduct of [Huizar] in this matter has been malicious, reckless, wanton, aggravated, and willful" (***Id.*** at ¶ 86);

c. Huizar's behavior was "willful, wanton, reckless, brazen and malicious." (***Id.*** at ¶ 88);

d. "[Huizar] conducted malicious, wanton and willful behavior in interfering with Plaintiff's marriage from August 2015 through the King's marital separation and…he continued the behavior until the parties were divorced in December 2017." (***Id.*** at ¶ 95);

e. "[Huizar's] conduct during the King's marriage was reprehensible and malicious." (***Id.*** at ¶ 101);

f. "This Court finds as a fact by clear and convincing evidence that aggravating factors are present in this matter, including but not limited to malice and willful and wanton conduct on the part of the Defendant, with the conscious and intentional disregard of and indifference to the rights and safety of others, which Defendant knew or should have known was reasonably likely to result in damage, injury or other harm." (***Id.*** at ¶ 99).[7]

Section 523(a)(6) provides that an individual debtor will not get a discharge from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." For the act to be willful and malicious "a debtor must have acted with 'objective substantial certainty or subjective motive' to inflict injury." ***In re Williams***, 337 F.3d 504, 508–09 (5th Cir. 2003) (citing ***In re Miller***, 156 F.3d 598, 603 (5th Cir. 1998)). Whether the acts were substantially certain to cause injury (the "objective test") is based on "whether the [d]efendant's actions, which from a reasonable person's standpoint were substantially certain to result in harm, are such that the court ought to infer that the debtor's *subjective* intent was to inflict a willful and malicious injury on the Plaintiff." ***In re Powers***, 421 B.R. 326, 335 (Bankr. W.D. Tex. 2009) (emphasis in original). A subjective motive to cause harm (the "subjective test") exists when a tortfeasor acts "deliberately and intentionally, in knowing disregard of the rights of another." *See* ***Miller***, 156 F.3d at 605–06 (adopting the definition of "implied malice" from ***In re Nance***, 566 F.2d 602, 611 (1st Cir. 1977)).

---

[7] The state court record is replete with Mrs. King's and Defendant's malicious and willful conduct. For example, Huizar and Mrs. King crossed state lines with the Kings' minor child to evade Plaintiff. (Complaint Ex. A, ECF No. 1-1, ¶ 37). Mrs. King and Huizar induced Plaintiff to come to the apartment they were sharing in a poor attempt to facilitate an encounter with Huizar so that Mrs. King could file assault charges against Plaintiff. (***Id***. at ¶¶ 44, 45). Mrs. King was sanctioned for filing a frivolous domestic action against Plaintiff. (***Id***. at ¶ 48). The King's minor child, as a result of the affair between Mrs. King and Huizar, is under court ordered mental health therapy. (***Id***. at ¶ 51). Mr. King suffers from PTSD and will receive therapy for a significant amount of time. Further, Plaintiff has experienced shame, humiliation, and a loss of status in his church community. (***Id***. at ¶ 78).

The Supreme Court has determined that the word "willful" under § 523(a)(6) modifies the word "injury," indicating that a finding of nondischargeability requires a deliberate or intentional injury, not merely a deliberate act that results in injury. ***Kawaauhua v. Geiger***, 523 U.S. 57, 61 (1998). In defining the term "malicious" under § 523(a)(6), the Fifth Circuit holds that it means "implied malice," as opposed to "special malice." ***Miller***, 156 F.3d at 605. "Implied malice" means "acts done with the actual intent to cause injury," whereas "special malice" requires a showing of a motive to harm. ***Id.*** The Fifth Circuit, in recognizing that the definition of implied malice is the same standard used by the Supreme Court for "willful injury," held that a finding of implied malice can render a debt non-dischargeable under § 523(a)(6). ***Id.*** (discussing ***Kawaauhua***, 523 U.S. 57).

Huizar argues that alienation of affections and criminal conversation are tort actions that seek to protect marital relationships against intentional third-party interference and are commonly and derisively termed "heart balm" actions because they purport to award money damages for emotional harm. W. PROSSER & W. KEETON, THE LAW OF TORTS § 124, at 929 (5th ed. 1984). Huizar contends that the 1978 amendments to the Bankruptcy Code continued nondischargeability of many claims consistent with the Bankruptcy Act of 1898 (e.g., tax. debts, support obligations); however, neither alienation of affections nor criminal conversation remained on the statutory list of non-dischargeable debts. *See* 11 U.S.C. § 523(a).

Defendant notes that the legislative history of 11 U.S.C. § 523(a)(6) states:

> Paragraph (6) excepts debts for willful and malicious injury by the debtor to another person or to the property of another person. Under this paragraph, "Willful" means deliberate and intentional. To the extent that *Tinker v. Colwell* … held that a looser standard is intended, and to the extent that other cases relied on *Tinker* to apply a "reckless disregard" standard, *they are overruled*. [italics added].

H.R. Rep No. 95-595, at 365 (1977); *see also* S. Rep. No. 95-989, at 79 (1978).[8]

Therefore, Huizar argues that in adopting the Bankruptcy Act of 1978 Congress expressly overruled ***Tinker*** and implicitly found that criminal conversation and its companion tort of alienation of affections, while perhaps reckless, were not willful and malicious *per se*. *See* ***id***.

Plaintiff argues that courts have found otherwise. *See* ***Meyer v. Meyer (In re Meyer)***, 100 B.R. 297, 301 (Bankr. D.S.C. 1988) (finding that plaintiff's judgment debt based on alienation of affection and criminal conversation nondischargeable under § 523(a)(6)); *accord* ***Keever v. Gallagher (In re Gallagher)***, 388 B.R. 694, (W.D.N.C. June 3, 2008). Specifically, in ***Keever v. Gallagher***, the court determined that damages for alienation of affection constitute a nondischargeable debt under 11 U.S.C. § 523(a)(6). ***Id***. at 704. The court found that the Gallagher's maintenance of her adulterous affair with Keever's husband, even after Keever told Gallagher that Keever loved her husband and intended to keep her marriage intact, was evidence that Gallagher knew with substantial certainty that harm would result to Keever and her marital relationship, and thus the judgment arising from the alienation of affection claim was a nondischargeable debt under § 523(a)(6). ***Id***.

In ***Blevins v. Coe***, the court found that the judgment for alienation of affection under Wisconsin law was nondischargeable pursuant to 11 U.S.C. § 523(a)(6). No. 91-0071-A, 1992 U.S. Dist. LEXIS 13704, at *7 (W.D. Va. Feb. 12, 1992) *aff'd*, 998 F.2d 1008 (4th Cir. 1993). There, the court noted that the tort of alienation of affection generally requires the plaintiff to prove malicious conduct and such malice implies "the intentional doing of a wrongful act without a just cause of excuse" within the contemplation of section 523(a)(6)". *See* ***id***. (citing ***Harlow v. Harlow***, 143 S.E. 720, 725–27 (Va. 1928)). Although there is no authority in the Fifth

---

[8] In ***Tinker v. Colwell***, 193 U.S. 473 (1904) the Supreme Court found under the Bankruptcy Act of 1898 that damages for alienation of affection were malicious and willful injuries to the plaintiff.

Circuit about whether a judgment arising from an alienation of affection or criminal conversation claim is nondischargeable for purposes of § 523(a)(6), this Court will adopt the analysis from the other courts and similarly determine that the Judgment is nondischargeable. Moreover, Huizar's arguments that claims for relief involving alienation of affection and criminal conversion are arcane and without merit is not for this Court to decide. This Court must give comity to the North Carolina state court judgment. Huizar's argument that these claims for relief are contrary to law ignores the fact the neither the North Carolina Legislature or State Supreme Court have overturned these causes of action.

**The Judgment Does not Violate the Defendant's First and Fourteenth Amendment Rights.**

Defendant argues the state court judgment is "void as unconstitutional restraint on Defendant's guaranteed free speech rights and under the First and Fourteenth Amendments of the U.S. Constitution." (ECF No. 27, ¶ 87). Defendant's arguments are not well taken for two reasons: (1) Defendant was afforded adequate due process; and (2) even if the North Carolina laws do implement the First Amendment rights of expression, this is not the appropriate forum for challenging such laws.

Defendant's Fourteenth Amendment argument relies on the Supreme Court's decision that "[t]he action of state courts in imposing penalties or depriving parties of other substantive rights without providing adequate notice and opportunity to defend, has, of course, long been regarded as a denial of the due process of law guaranteed by the Fourteenth Amendment." ***Shelley v. Kraemer***, 334 U.S. 1, 16 (1948). Nevertheless, the facts in this case do not offend Defendant's right to due process. In the underlying case, a North Carolina State Court made specific findings of fact that Defendant—although properly served by publication both in Texas and North Carolina—failed to answer or appear. (Complaint Ex. A, ECF No. 1-1, ¶¶ 2, 3). Then,

after a default judgment was entered, Defendant appeared and presented evidence over the course of five days at a hearing on damages in North Carolina. (***Id***. at ¶ 4). It was during this hearing that the award Defendant now seeks to discharge was entered. Accordingly, Defendant was afforded due process.

Defendant's contention that "[t]he North Carolina 'heart balm' torts of alienation of affections obviously constitute content-based prohibitions on speech," is not so obvious. (ECF No. 27, ¶ 84). Defendant argues that "when individuals act on their romantic feelings and/or engage in consensual sexual intercourse, their conduct conveys a general message regarding the desire to be intimate with or display affection for one another[.]" and in doing so "a great likelihood exists that a reasonable person, when considering the conduct, would observe a 'message' of affection or intimacy." (ECF No. 27, ¶¶ 79, 81). Even assuming messages of affection or intimacy conveyed during extramarital affairs are forms of expression protected by the First Amendment—and this Court makes no finding that they are—Defendant fails to mount an appropriate facial or as-applied challenge to the law. Moreover, the underlying facts seem to suggest the Defendant and Danielle Swords King had no intention of ever convey their "message" to the public where it could be observed. (Complaint Ex. A, ECF No. 1-1, ¶¶ 8(b), 15, 20, 22, 23, 35, 43) (findings of fact related to Defendant and Sword's attempts to conceal the affair).

Most importantly, the North Carolina Supreme Court has made clear that Alienating of Affections and Criminal Conversation are viable causes of action in the State of North Carolina. *See* ***Cannon v. Miller***, 322 S.E.2d 780 (1984), *vacated*, 327 S.E.2d 888 (1985) ("It is therefore ordered that the petition for discretionary review is allowed for the sole purpose of vacating the decision of the Court of Appeals purporting to abolish the causes of action for Alienation of

Affections and Criminal Conversation."). This Court's jurisdiction over litigation brought within the confines of a bankruptcy case is limited to matters "arising under" Title 11, "arising in" a case under Title 11, or proceedings "related to" a case under Title 11. *See* 28 U.S.C. §§ 157, 1334(b). While the dischargeability of state court judgements is well within this Court's purview, the constitutionality of North Carolina common laws is not. As Plaintiff rightly acknowledges, "if Defendant believes the basis of a foreign judgement . . . are somehow unconstitutional[,] the proper venue for that argument is in the North Carolina court system, not in this one." (ECF No. 33, ¶ 12).

## CONCLUSION

The Court has reviewed North Carolina Judgment and considered the arguments made by the parties. In doing so, the Court finds that: (1) collateral estoppel and res judicata preclude relitigation of the Judgment; (2) all issues underlying dischargeability were fully litigated in the North Carolina suit; (3) the Judgment establishes a nondischargeable debt under § 523(a)(6); and (4) damages, costs, and expert fees are nondischargeable under § 523(a)(6).

A separate order granting the Plaintiff's Motion for Summary Judgment will be entered.

# # #